### OAKES *v.* DE LANCEY.

*(Superior Court of New York City, Special Term.    April, 1891.)*

DEED—CONSTRUCTION—LAND CONVEYED.

   A deed described the boundary of the land conveyed as a line running a certain course, "about 865 feet, to a point on the shore of Long Island sound; thence running along said shore and sound as the same bend and turn easterly; and thence southerly, to their intersection with" another line specified. The distance named carried the line to low-water mark at a place where the tide ebbs and flows. *Held* that, notwithstanding the rule that only the land to high-water mark is conveyed by a deed naming as a boundary the shore of the sea or other navigable water, this description was sufficient to convey the land to low-water mark.

Action by Thomas F. Oakes against Edward F. De Lancey. The defendant, owner of certain lands known as "Vergemere," at De Lancey's Neck, in the town of Mamaroneck, Westchester county, offered them for sale at auction June 4, 1890. The posters and advertisements represented the place as containing 22.57 acres. The plaintiff was a bidder at the sale, and the property was sold to him at $3,125 per acre, or $70,531.25 for the 22.57 acres. When the parties met to close the title the plaintiff claimed that the premises purchased contained only 18.734 acres, and at this calculation the purchase price would be $58,543.75, which sum the plaintiff tendered, and demanded a deed. The defendant refused to accept the tender, and it was thereupon agreed that the plaintiff should take the deed, pay the $70,531.25 demanded, and reserve the right to sue for and recover back the difference between the $70,531.25 demanded and the $58,543.75 tendered if it turned out that the deed conveyed only the acreage contended for by the plaintiff. The action is to recover this difference, to-wit, $11,987.50. No disputed question of title is involved, and the sole question to be decided is whether the deed delivered conveys by its descriptive clause 22.57 acres of land. This was so declared at the trial, as well as on the motion made by the defendant, in the supreme court, to change the venue to Westchester county, which application was denied by Judge PATTERSON on the ground that "the only claim made by the plaintiff is that he paid for more land than he has had conveyed to him, and the simple issue that he tendered by his complaint was the quantity or measurement of the land, and under his complaint he could not be allowed to try any question of failure of title to any part of the twen-

ty-two 57-100 acres." The general term of the supreme court adopted the same theory, and affirmed the order. 12 N. Y. Supp. 840. Under these decisions the trial is had here, instead of at the circuit, at Westchester county, where the land is situated.

*Holmes & Adams*, for plaintiff. *Martin J. Keogh*, for defendant.

McADAM, J. The property is situated on Long Island sound, at a place where the tide ebbs and flows, and the contention is settled by the decision of the question whether the land between low and high water mark is included or excluded from the measurements and description called for by the deed. If this piece of land is to be included, the land conveyed contains 22.57 acres, and the defendant is entitled to judgment. If it is to be excluded, the grant contains but 18.734 acres, and the plaintiff is entitled to recover. The plaintiff rests his right of action on the proposition that where the shore of the sea, bay, navigable river, or tide-water is named as the boundary of land in a grant of title, the land to ordinary high-water mark is intended. This is undoubtedly the rule. Ger. Real Est. (3d Ed.) 517; *People* v. *Appraisers*, 33 N. Y. 461; *Mayor, etc.,* v. *Hart,* 95 N. Y. 443; *Same* v. *Starin*, 106 N. Y. 1, 12 N. E. Rep. 631; *Commissioners* v. *People,* 5 Wend. 443; *People* v. *Tibbetts,* 19 N. Y. 523; *Gould* v. *Railroad Co.,* 6 N. Y. 522; *Wheeler* v. *Spinola,* 54 N. Y. 377; 3 Kent, Comm. 432. The defendant concedes the law to be as stated, but claims that the grant in this instance is not bounded "by" the shore, and hence not within the rule referred to. The boundary on the water front is shown by the first two courses in the deed, which read as follows: "Thence running along said division line north, 42 degrees and 47 minutes east, about 865 feet, to a point on the shore of Long Island sound; thence running along said shore and sound, as the same bend and turn easterly; and thence southerly, to their intersection with the center line of De Lancey avenue aforesaid." The surveyors all agree that the description contained in the deed to the plaintiff carries the grant to low-water mark, so that, if the grantor had title to the land between low and high water mark, it passed by the deed delivered to the plaintiff. In construing the description of two deeds running to the shore of a navigable stream, the court, in *Storer* v. *Freeman,* 6 Mass. 435, said, *inter alia :* "The shore has two sides,—high-water mark and low-water mark. Elwell's corner is described as a known monument. If it is at low-water mark, it is by the shore, as well as if it was a high-water mark. Now, if it be a fact that this corner was a known monument at low-water mark, the plaintiff might be admitted to prove it by oral testimony. Then the boundary line, running to Elwell's corner, would cross the flats to low-water mark; and the next boundary line, running by the flats, must run by the same side of the flats on which Elwell's corner stands; and thus the flats would be included by the boundaries of the land conveyed by the second deed. And further, from this fact, the first deed would receive a similar consideration, as it was executed by the same grantor." The deed to the plaintiff conveys title along a certain line, "about 865 feet, to a point on the shore of Long Island sound," and if, as decided by the last case, low-water mark is by the shore, as well as high-water mark, the point indicated by the "865 feet" carried the line directly to that point on the shore. The metes and bounds show clearly that the defendant intended to and did convey to low-water mark. If the plaintiff was misled by this fact, and did not intend to purchase to low-water mark, he might, perhaps, have obtained from the court relief from the sale; but he made no such application. If deceived in respect thereto, to his damage, he might, on such ground, have some legal remedy, but he has invoked none. The sole question to be decided is whether the deed conveyed 22.57 acres of land, and it undoubtedly did. It is conceded that, as a rule, land between low and high water mark, where the tide ebbs and flows, is by the common law vested in the state. Ger. Real Est. (2d Ed.)

714; Ang. Water-Courses, §§ 544–546, except in certain cases of colonial charters, (*Mayor, etc.,* v. *Hart,* 95 N. Y. 443,) or colonial grants, (*Trustees* v. *Strong,* 60 N. Y. 56.) The land on Long Island sound, between low and high water mark, is likewise vested in the state, in the absence of colonial grants such as were proved in the case of *Trustees* v. *Strong, supra.* Whether a similar grant exists in respect to the property in question, or whether the state has released its title to the lowland to the owner of the upland, as authorized by statute, (1 Rev. St., 6th Ed., 602,) could not be ascertained, for the reason that the plaintiff did not litigate the defendant's title, and declined to litigate that issue. For all the purposes of this litigation it must be assumed, therefore, that the defendant, in some legal manner, acquired title to the lowland, and that it passed by his deed, if the lowland is sufficiently covered by the descriptive words of the deed, and as matter of fact it is. Notwithstanding the rule of construction which bounds a grant by the line of high-water, it will not do to hold that a conveyance of land on the shore will not, under any circumstances, convey the land between high and low-water mark. If the grantor of the land has title to the lowland, and a deed of the upland will convey the lowland, if the descriptive words of the grant contain metes and bounds which include the lowland as well as the highland, and this is the situation of the parties here. The plaintiff argues, and with reason, that there are no natural or artificial monuments at low-water mark to locate the boundary line, as in *Storer* v. *Freeman, supra,* and that the words, "about 865 feet to a point on the shore," etc., do not meet legal requirements, yet this is a question which might be made clear in an action involving the question of title. As to the meaning of the term "about," see *Belknap* v. *Sealey,* 14 N. Y. 143. The question is novel, and not entirely free from doubt, and one which merits review by the court of last resort. Upon the issues litigated there must be judgment for the defendant, but without prejudice to a new action alleging want of title in the defendant to the lowlands, in which the latter may be required to produce whatever grants vest in him the title he undertook to convey.